UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BELL AND LISA PHILLIPS,<br><br>                                    Plaintiffs,<br><br>v.<br><br>OAMA CORONADO LLC, et al.,<br><br>                                    Defendants. | Case No.:  3:25-cv-02227-RBM-MMP<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 3]**<br><br>**(2) DISMISSING COMPLAINT ON SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) [Doc. 1]**<br><br>**(3) DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [Doc. 2]** |

This action allegedly concerns an unlawful detainer matter adjudicated in the Superior Court of California, County of San Diego ("San Diego Superior Court"), captioned *Oama Coronado LLC v. Bell*, Case No. 25UD010130C (the "Unlawful Detainer Action").  (*See* Doc. 1-2 at 2, 8.)[1]  On August 27, 2025, Plaintiffs Michael Bell and Lisa

---

[1] The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other citations unless otherwise noted.

Phillips (collectively, "Plaintiffs") filed the instant Complaint ("Complaint"), accompanied by several supporting documents and declarations.  (Doc. 1 ["Compl."].)  Along with their Complaint, Plaintiffs filed an Application to Proceed *In Forma Pauperis* ("IFP Application").  (Doc. 3.)  Plaintiffs also filed a Motion for Temporary Restraining Order ("TRO Motion").  (Doc. 2.)

For the reasons discussed below, the Court (1) **GRANTS** Plaintiffs' IFP Application (Doc. 3); (2) **DISMISSES** the Complaint on screening without prejudice; and (3) **DENIES** Plaintiffs' TRO Motion (Doc. 2).

## I.    **BACKGROUND**[2]

Plaintiffs bring the instant action against the San Diego County Sheriff's Department (the "Sheriff" or "Sheriff's Department"), Deputy Does 1–5 ("Deputy Does") (collectively, the "Sheriff Defendants"), and several private individuals and entities including Defendants Oama Coronado LLC, Todd Brisco & Associates, Veronica Guzman, and Sirem Roman (collectively, the "Private Defendants").  (Compl. at 2.)

The San Diego Superior Court entered judgment against Plaintiffs on July 23, 2025 in the Unlawful Detainer Action and issued the Writ of Possession of Real Property ("Writ of Possession") on July 31, 2025.  (Doc. 1-2 at 49.)  The Sheriff's Department's authorized agent issued a Notice to Vacate stating that possession of the property must be turned over on August 19, 2025 pursuant to the Writ of Possession issued by the San Diego Superior Court.  (Doc. 1-2 at 5, 8.)

On August 15, 2025, Plaintiff Michael Bell ("Plaintiff Bell") filed a Chapter 7 voluntary bankruptcy petition for relief.  (Doc. 1-2 at 1.)  That same day, Plaintiff Bell alleges that he "faxed the bankruptcy case notice directly to the Sheriff's Civil Division," and deputies later claimed they did not receive the notice.  (Doc. 1-2 at 20.)  On August 19, 2025 at 8:45 a.m., the San Diego Superior Court issued a minute order deeming the

---

[2] The Court's summary of Plaintiff's Complaint below reflects Plaintiffs' factual and legal allegations, not conclusions of fact or law by this Court.

Unlawful Detainer Action stayed as to Plaintiff Bell only and directed Plaintiff Bell to file a Notice of Stay.  (Doc. 1-2 at 2.)

The Sheriff's Department executed the eviction on August 20, 2025.  (Doc. 1-2 at 20.)  Plaintiffs allege that Deputy Does "dragged [Plaintiff Bell] from his bed in pajamas, placed him in excessively tight handcuffs, rifled through his wallet, and forcibly removed him from his residence."  (Compl. at 5; *see* Doc. 1-2 at 21.)  Plaintiffs also allege that a Deputy Doe "deliberately knocked [Plaintiff Bell's] phone out of his hands inside the apartment, preventing the call" he was placing to the "Coronado police to report the [Deputies Doe] as trespassers."  (Doc. 1-2 at 20.)  The Deputy Does then "pulled him by one arm into the hallway, dragging him" out from the property.  (*Id.*)  Plaintiffs allege the Deputy Does also threatened Plaintiff Lisa Phillips ("Plaintiff Phillips") "with handcuffs when she attempted to retrieve her belongings."  (*Id.* at 21.)  The Deputy Does also "strip-searched [Plaintiff Bell] in the parking lot" and "never read [him] his [*Miranda*] rights."  (Doc. 1-4 at 1.)

After the arrest, the Deputy Does "transported [Plaintiff Bell] to [the] San Diego County Jail where he was confined for 16 hours under inhumane conditions: overcrowded cells, human feces, broken toilets, no food or water, no sanitary supplies, and denial of telephone access."  (Compl. at 6; Doc. 1-2 at 21.)  Plaintiff Bell had a "wide open cut on [his] foot" and was "placed in a 10x8 foot cell with approximately 12–14" detainees who appeared under "the heavy influence of fentanyl and street drugs," and were exhibiting "erratic and threatening behavior."  (Doc. 1-5 ¶¶ 6, 9.)  Plaintiff was issued a $10,000 bail fee (*see* Doc. 1-2 at 27) and was subsequently released several hours after a bond was posted.  (Doc. 1-5 ¶ 21.)

Since August 20, 2025, Plaintiffs have been allowed only one 20-minute supervised visit to the property to retrieve their belongings.  (Doc. 1-4 at 2.)  On August 21, 2025, the Sheriff's Department's authorized agent signed and executed the Return on Writ of Possession.  (Doc. 1-2 at 48.)  On August 22, 2025, the bankruptcy court issued an "Amended Plaintiff's Notice of No Automatic Stay in Place by Operation of Law."  (Doc.

3

1-2 at 30–32.)  On August 26, 2025, the San Diego Superior Court issued a minute order finding that based on the bankruptcy court's ruling, there is no automatic stay as to Plaintiff Bell.  (Doc. 1-2 at 19.)

Plaintiffs filed the instant Complaint on August 27, 2025, alleging the following constitutional and state law claims: (1) violation of an automatic bankruptcy stay under 11 U.S.C. § 361 ("First Cause of Action"); (2) violation of the Fourth Amendment under 42 U.S.C. § 1983 ("Second Cause of Action"); (3) violation of the Eighth Amendment under 42 U.S.C. § 1983 ("Third Cause of Action"); (4) denial of due process based on the Fourteenth Amendment under 42 U.S.C. § 1983 ("Fourth Cause of Action"); (5) violation of California's Bane Act under Civil Code § 52.1 ("Fifth Cause of Action"); and (6) common law claims for conversion and trespass to chattels ("Sixth Cause of Action"). (Compl. at 5–7.)  Plaintiffs request monetary and injunctive relief, including "at least $15,000 immediately . . . , $10,000 bail bond, plus additional damages to be proven at trial."  (*Id*. at 10.)

## II.    **IFP APPLICATION**

All parties instituting any civil action, suit, or proceeding in a District Court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[3]  *See* 28 U.S.C. § 1914(a).  A court may authorize the commencement of a suit without prepayment of the filing fee if the plaintiff submits a signed affidavit "that includes a statement of all assets[,] which shows [an] inability to pay initial fees or give security." S.D. Cal. Civ. R. 3.2(a).  The facts of an affidavit of poverty must be stated "with some particularity, definiteness, and certainty."  *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (quoting *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981)).

---

[3] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc.  Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The additional $55 administrative fee does not apply to persons granted leave to proceed in forma pauperis ("IFP").  *Id*.

The determination of indigency falls within the district court's discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds*, 506 U.S. 194 (1993) ("[§] 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency."). It is well-settled that a party need not be completely destitute to proceed IFP, but he must adequately prove his indigence. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).

To satisfy the requirements of 28 U.S.C. § 1915(a), "[a]n affidavit in support of an IFP [motion] is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo*, 787 F.3d at 1234 (citing *Adkins*, 335 U.S. at 339); *see also McQuade*, 647 F.2d at 940 (an adequate affidavit should state supporting facts "with some particularity, definiteness and certainty"). No exact formula is "set forth by statute, regulation, or case law to determine when someone is poor enough to earn IFP status." *Escobedo*, 787 F.3d at 1235. Consequently, courts must evaluate IFP requests on a case-by-case basis. *See id.* at 1235–36 (declining to implement a general benchmark of "twenty percent of monthly household income"); *see also Cal. Men's Colony*, 939 F.2d at 858 (requiring that district courts evaluate indigency based upon available facts and by exercise of their "sound discretion"), *rev'd on other grounds*, 506 U.S. 194 (1993) (citation omitted).

In their IFP Application, Plaintiffs list $1,596 as their monthly income from self-employment and $292 from public assistance (i.e., food stamps). (Doc. 3 at 1–2.) Plaintiffs declare that they have $626 in a checking account with Chase Bank as of August 27, 2025. (*Id.* at 2.) Plaintiffs also list $3,739 in monthly expenses, including $2,908 per month on rent payments. (*Id.* at 4–5.) Specifically, Plaintiff Bell lists that he spends $98 per month on medical and dental expenses, $150 per month on transportation expenses, $178.59 per month on renter's and motor vehicle insurance, and $405 per month on motor vehicle installment payments. (*Id.* at 4.) Plaintiff Bell also declares that he has filed for Chapter 7 bankruptcy. (*Id.* at 5.) Plaintiff Phillips lists that she spends $55 per month on medical

and dental expenses and $500 per month in credit card installment payments.  (*Id*.)

Plaintiffs further declare that they have spent, or will be spending, $2,000 in conjunction with this lawsuit.  (*Id*. at 5.)  Plaintiffs are not owed any money, do not have any dependents who rely on them for financial support, and do not anticipate any changes to their income or expenses in the next twelve months.  (*Id*. at 2–3.)  Based on their IFP Application, Plaintiffs' monthly expenses, $3,739, exceed their monthly income of $1,888.  Accordingly, the Court finds that Plaintiffs have sufficiently shown an inability to pay the $405 filing fee pursuant to § 1915(a) and Plaintiffs' IFP Application is **GRANTED**.

## III.    <u>SCREENING UNDER 28 U.S.C. § 1915(e)</u>

A complaint filed by any person proceeding IFP pursuant to 28 U.S.C. § 1915(a) is subject to mandatory, sua sponte review and dismissal by the Court if the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim.").  "[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."  *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

In addition, "[f]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Courts address the issue of subject matter jurisdiction first, as "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

## A.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under the *Rooker-Feldman* doctrine, district courts lack subject matter jurisdiction to review de facto appeals from state court judgments. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983). A federal action is a "de facto appeal" of a state court decision when the plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). Lower federal courts cannot adjudicate actions brought by "state-court losers" seeking relief from "state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobile Corp. v. Saudi Basic Indus., Corp.*, 544 U.S. 280, 284 (2005)). This is true even when the challenge to the state court decision involves federal constitutional issues. *See Dubinka v. Judges of the Superior Ct.*, 23 F.3d 218, 221 (9th Cir. 1994); *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).

District courts must also refuse to decide any issue raised in the suit that is "inextricably intertwined" with the state court proceedings. *Noel*, 341 F.3d at 1158; *see also Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) ("The 'inextricably intertwined' language . . . is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis."). "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

Both conditions are present here. First, this action constitutes a de facto appeal of the San Diego Superior Court's judgment in the Unlawful Detainer Action. In the Complaint, Plaintiffs request "immediate restoration of possession of [their] home" or alternatively "30 days 24/7 access to pack and move [their] belongings." (Compl. at 10.)

In the Declaration of Michael Bell and Lisa Phillips, Plaintiffs further request that the Court "requir[e] the Sheriff and Coronado Police to stand down" and "prohibit[ ]Defendants from re-leasing or disposing of [their] property." (Doc. 1-4 at 3.) Because Plaintiffs seek a remedy by which this Court would invalidate and reverse a state court's judgment in the Unlawful Detainer Action, they ask the Court to "review the final determinations of a state court in judicial proceedings," which is at the core of *Rooker-Feldman*'s prohibition. *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir. 2000); *see Richards v. Mercy Hous. Cal.*, No. C 12-00234 JW, 2012 WL 174186, at *2 (N.D. Cal. Jan. 18, 2012) ("[I]nsofar as he requests that the Court 'stop' the eviction," Plaintiffs are evidently "seeking relief from the state court judgment."). As such, the Court lacks jurisdiction to grant the relief requested.

Additionally, Plaintiffs' claims are "inextricably intertwined with the merits of a state-court judgment" because they "succeed[] only to the extent that the state court wrongly decided the issues before it." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Indeed, Plaintiffs allege the "eviction was void by law." (Compl. at 5.) Although Plaintiffs claim the eviction violated their constitutional rights, such claims "rely on the premise that Plaintiff . . . [was] in fact entitled to remain in possession," meaning the state court's judgment was "wrongful." *Koshak v. Cnty. of Orange*, No. SACV 13-01732-CJC(ANx), 2014 WL 12626351, at *3 (C.D. Cal. Jan. 24, 2014), *aff'd*, 637 F. App'x 323 (9th Cir. 2016). Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' claims arising from the state court's judgment in the Unlawful Detainer Action and its subsequent enforcement. *See Iula v. Voos*, No. 23-CV-2277 JLS (AHG), 2024 WL 171395, at *7 (S.D. Cal. Jan. 16, 2024) ("The issue of enforcing an unlawful detainer judgment is inextricably intertwined with the judgment itself."). To the extent such claims are inextricably intertwined with those adjudicated in the Unlawful Detainer Action, the First, Second, Fourth, Fifth, and Sixth Causes of Actions are **<u>DISMISSED</u>** **without leave to amend**.

**B.    Failure to State a Claim**

"[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP]

complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Federal Rule of Civil Procedure ("Rule") 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

The Court "ha[s] an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). However, the Court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a specific defendant deprived him of a right guaranteed under the Constitution or a federal statute and "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The 'under color of state law' requirement of § 1983 is equivalent to the

'state action' requirement of the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794, n. 7 (1966).

### 1.    Private Defendants

Plaintiffs assert their Fourth Cause of Action for violation of their Fourteenth Amendment Due Process rights against the Private Defendants. (Compl. at 5.)  Although the Court has determined that it lacks subject matter jurisdiction over Plaintiffs' due process claim pursuant to the *Rooker-Feldman* doctrine, the Court further notes that Plaintiffs fail to state their Fourteenth Amendment claim against the Private Defendants because § 1983 reaches only actions taken "under color" of state law and generally does not apply to private individuals.  *See Taylor v. First Wyo. Bank, N.A.*, 707 F.2d 388, 389 (9th Cir. 1983).  "A private action may constitute an action under color of state law if the private person willfully participates in joint action with the state or its agents. . . . [or] if it constitutes the exercise of 'some power delegated to [the private person] by the state which is traditionally associated with sovereignty' or is 'traditionally exclusively reserved to the state." *Id*. (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)).

Here, Plaintiffs assert their due process claims against Defendants Oama Coronado, LLC, Sirem Roman, attorney Veronica Guzman, and her law firm Todd Brisco & Associates, based on their participation in the Unlawful Detainer Action.[4]  However, their participation in state court proceedings does not demonstrate action under color of state law.  The Court also finds that Plaintiffs fail to allege any facts which adequately link the Private Defendants to any specific deprivation of Plaintiffs' constitutional rights, as required to state a plausible § 1983 claim.  *See Jones v. Cmty. Redevelopment Agency of*

---

[4] Defendant Oama Coronado, LLC is the landlord who initiated the Unlawful Detainer Action against Plaintiffs in San Diego Superior Court. (Doc. 1 at 2, 5.)  Defendant Sirem Roman appears to be the "Community Director" of Defendant Oama Coronado, LLC. (*Id*.)  Attorney Veronica Guzman, and her law firm Todd Brisco & Associates, represented Defendant Oama Coronado, LLC as the landlords' counsel in the Unlawful Detainer Action. (*Id*.)

*City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) ("The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim.").  The Fourth Cause of Action must therefore be **<u>DISMISSED</u>** as to the Private Defendants on this basis.

### 2.    Municipal Defendant

Plaintiffs bring their Second Cause of Action for violation of their Fourth Amendment rights and Third Cause of Action for violation of their Eighth Amendment rights against a municipal agency—the Sheriff's Department.  (Compl. at 5.)  To assert claims against a municipal agency, Plaintiffs must allege that a constitutional violation was committed pursuant to a "formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (cleaned up); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Plaintiffs must also show the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

In this case, Plaintiffs do not identify or mention any "formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette*, 979 F.2d at 1346 (cleaned up).  Nor do Plaintiffs plead that the alleged constitutional violations were committed pursuant to any such policies, practices, or customs.  Plaintiffs therefore fail to state a claim against the Sheriff's Department under 42 U.S.C. § 1983.  Accordingly, the Second and Third Causes of Action as to the Sheriff's Department are **<u>DISMISSED</u> with leave to amend**.

### 3.    Deputy Does

#### a.    Fourth Amendment (Second Cause of Action)

Plaintiffs allege that the Deputy Does engaged in conduct that constituted an "unlawful seizure" in violation of their Fourth Amendment rights.  (Compl. at 7.)

The Fourth Amendment, which applies to the states through the Fourteenth

11

Amendment, protects against unreasonable searches and seizures by law enforcement officers. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). "All claims that law enforcement officers have used excessive force—deadly or otherwise—in the course of an arrest must be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992), *as amended*. "Reasonableness" is determined by an objective standard. *See Graham*, 490 U.S. at 397. To determine whether a use of force was objectively reasonable, a court must balance the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake." *See id.* at 396. "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances." *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991).

Based on Plaintiffs' factual allegations, the Court finds that: (1) Plaintiffs fail to state a Fourth Amendment claim based on an "unlawful search"; (2) Plaintiff Phillips fails to individually state a Fourth Amendment excessive force claim; and (3) Plaintiff Bell fails to individually state a Fourth Amendment excessive force claim.

First, Plaintiffs allege that five Deputy Does "entered [their] home without valid authority or warrant" and that their actions in effectuating the eviction constituted "an unlawful seizure of [their] home and property in violation of the Fourth Amendment." (Compl. at 5; *see* Doc. 1-2 at 21.) However, for the reasons previously discussed (*see* Sec.III.A), the Court lacks subject matter jurisdiction over Plaintiffs' claims that are premised on the legality of the eviction and enforcement of the Writ of Possession issued by the San Diego Superior Court.

Next, Plaintiff Phillips alleges that the Deputy Does "threatened [her] with handcuffs and barred [her] from re-entering [the Property] to collect her belongings." (Compl. at 5.) Although it appears that Plaintiff Phillips attempts to state an excessive force claim, she does not allege that she was arrested, searched, or that any Deputy Doe used any force on

12

her.  Plaintiff Phillips therefore fails to state a Fourth Amendment excessive force claim.

Finally, as to Plaintiff Bell, the Deputy Does allegedly "dragged [him] from his bed in pajamas, placed him in excessively tight handcuffs, rifled through his wallet, and forcibly removed him from his residence."  (*Id*.)  He also claims the Deputy Does "strip-search[ed] him in the public parking lot" and that "no [*Miranda*] rights were ever read at any time."  (Doc. 1-2 at 20, 21.)  Excessively tight hand cuffs may be objectively unreasonable force in some circumstances.  *See Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (finding excessively tight handcuffing that caused permanent nerve damage violated the Fourth Amendment); *Gregory v. Adams*, No. CIV S-05-1393 FCD EFB P., 2008 WL 486013, at *5 (E.D. Cal. Feb. 19, 2008) (finding tight handcuffing in violation of the Eighth Amendment was a triable issue of fact where the defendant handcuffed the plaintiff, who was wearing a wrist brace due to his arthritis and tendinitis, despite the plaintiff's pleas that he was in pain), *adopted by* 2008 WL 780672 (E.D. Cal. Mar. 21, 2008).

Here, Plaintiff Bell fails to provide any context regarding the "facts and circumstances" surrounding the arrest, the alleged strip search, or the allegedly tight handcuffing sufficient to state a plausible claim.  *See Graham*, 490 U.S. at 396 (stating the standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").  In the Complaint, Plaintiff Bell alleges that the handcuffs cut and bruised his wrists (Doc. 1-4 at 1), but he does not describe how the handcuffs caused him to suffer unconstitutional levels of pain, or that he communicated such concerns to any of the Deputy Does.  Plaintiff Bell also fails to describe the alleged strip search and does not provide any facts to support his claim that it constituted an unreasonable search in violation of the Fourth Amendment, as opposed to a less intrusive search.  *See United States v. Palmer*, 575 F.2d 721, 723 (9th Cir. 1978) (distinguishing "between a search of pockets and a strip search [because] there can be a wide variety of

13

types of intrusion, with varying degrees of intrusiveness"). His threadbare allegations are therefore insufficient to state a claim for excessive force based on tight handcuffing and the alleged strip search. *See Petros v. Duncan*, Case No. 1:19-cv-00277-SAB, 2019 WL 3459094, at *3 (E.D. Cal. July 31, 2019) (holding that plaintiff failed to state claim for excessive force under the Fourth Amendment where plaintiff alleged only that he told officer that handcuffs were too tight); *Devore v. Dominguez*, 2020 WL 7223261, at *4 (C.D. Cal. 2020) (dismissing Fourth Amendment excessive force claim where the plaintiff only alleged that he told officers the handcuffs were too tight because he did not "allege any facts describing the way in which he was handcuffed or any facts establishing how the handcuffs caused [the plaintiff] to suffer unconstitutional levels of pain, bruises, or any other injury."), *adopted by* 2021 WL 1554062 (Apr. 20, 2021). Plaintiff Bell therefore fails to state a Fourth Amendment excessive force claim.

Based on the foregoing reasons: (1) Plaintiffs' Second Cause of Action for unlawful seizure under the Fourth Amendment is **DISMISSED** **without leave to amend**; (2) Plaintiff Phillips' Second Cause of Action for excessive force under the Fourth Amendment is **DISMISSED** **without leave to amend**; and (3) Plaintiff Bell's Second Cause of Action as to the Deputy Does for excessive force under the Fourth Amendment is **DISMISSED** **with leave to amend**.

### b.    Eighth Amendment (Third Cause of Action)

Plaintiff Bell asserts an Eighth Amendment claim against the Sheriff Defendants based on jail conditions he experienced after his arrest on August 20, 2025, which he claims "amount to cruel and unusual punishment under the Eighth Amendment." (Compl. at 6; Doc. 1-5 ¶¶ 22.) Specifically, Plaintiff Bell alleges the Deputy Does "transported him to San Diego County Jail where he was confined for 16 hours under inhumane conditions: overcrowded cells, human feces, broken toilets, no food or water, no sanitary supplies, and denial of telephone access." (Compl. at 6.) While Plaintiff Bell references the Eighth Amendment's "cruel and unusual" language, the Court liberally construes Plaintiff's claim

under the Due Process Clause of the Fourteenth Amendment.[5]  *See Bernhardt v. Cnty. of Los Angeles*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints.").  The Ninth Circuit generally looks "to the Eighth Amendment as a starting point for determining the rights of pretrial detainees under the Fourteenth Amendment." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  These include "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  To plead a claim based on "cruel and unusual" punishment, a plaintiff must allege facts to demonstrate he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that the prison officials he seeks to hold liable had a "sufficiently culpable state of mind." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995).  "A prison official cannot be found liable under the Cruel and Unusual Punishment Clause for denying an inmate humane conditions of confinement 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 837).

---

[5] The Eighth Amendment applies to convicted prisoners, while the Fourteenth Amendment applies to claims concerning conditions of confinement raised by pretrial detainees.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (noting "the Due Process Clause" is applicable to pre-trial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions") (quoting *United States v. Lovett*, 328 U.S. 303, 317–18 (1946)).

In this case, Plaintiff Bell alleges that he had a "wide open cut on [his] foot" and was "placed in a 10x8 foot cell with approximately 12–14" detainees who appeared under "the heavy influence of fentanyl and street drugs," and were exhibiting "erratic and threatening behavior." (Doc. 1-5 ¶¶ 6, 9.)  He also alleges the "cell contained only one broken toilet, which overflowed with human waste [and the] floor was contaminated with human feces, filth, and blood stains." (*Id*. ¶¶ 9–10.)  Plaintiff Bell concludes that these conditions made him fear for his safety and health (*id*. ¶ 7), hold his "bowels for more than 14 hours, enduring severe pain, humiliation, and extreme distress," (*id*. ¶ 12), "forced [him] to urinate in public, . . . and exposed [him] to disease with an open foot wound" (Compl. at 6).

However, Plaintiff Bell does not allege any facts to support that the Deputy Does knew or should have known of the open wound on his foot or of any other substantial risk to Plaintiff Bell's health and safety.  *See, e.g.*, *Sanders v. Sacramento Sheriff's Dep't*, No. 2:22-cv-01232-TLN-CKD PS, 2022 WL 14126233, at *4 (E.D. Cal. Oct. 24, 2022) (dismissing constitutional claim based on conditions of confinement where the plaintiff stated "he was without water and unable to flush the toilet for three days" but did "not identify any individual defendants allegedly responsible for these deprivations or explain what those defendants did or failed to do to cause the violations.").  Although Plaintiff Bell alleges the Deputy Does ordered him to remain seated despite his "obvious fear of exposure," he does not plausibly allege that any Deputy Does "knew of and failed to respond reasonably to a substantial threat to [his] health." *Cf. Flourney v. Diaz*, Case No.: 3:21-cv-01767-RBM-BGS, 2022 WL 4544715, at *4 (S.D. Cal. Sept. 27, 2022) (finding allegations in support of an Eighth Amendment claim were "sufficient to survive the 'low threshold' for proceeding past the sua sponte screening" where plaintiff alleged that he informed defendants about the risks to his health on several occasions).

Accordingly, Plaintiff Bell's Eighth Amendment claim against the Deputy Does is **DISMISSED** with leave to amend.

## C.    Immune Defendants

Plaintiffs assert several constitutional claims against the Sheriff Defendants arising

16

out of their enforcement of the Writ of Possession.  In general, "[a] public official is entitled to immunity from suit for civil rights claims arising out of his or her execution or enforcement of a facially valid court order."  *Ezor v. McDonnell*, No. CV 19-8851-JVS (AGR), 2020 WL 2813538, at *5 (C.D. Cal. Apr. 13, 2020) (citing *Engebretson v. Mahoney*, 724 F.3d 1034, 1039–41 & n.7 (9th Cir. 2013)).  Under California law, the Sheriff is statutorily required to levy on a writ of possession and is thereby "immune from liability in the execution of 'all process and orders regular on their face and issued by competent authority, whatever may [be] the defect in the proceedings upon which they were issued.'"  *Lyons v. Santa Barbara Cnty. Sheriff's Off.*, 231 Cal. App. 4th 1499, 1503 (2014) (citing Cal. Code Civ. Proc. § 262.1; *George v. Cnty. of San Luis Obispo*, 78 Cal. App. 4th 1048, 1054–1055 (2000)).  Indeed, the Supreme Court "has long expressed the general idea that public officials who ministerially enforce facially valid court orders are entitled to absolute immunity."  *Engebretson*, 724 F.3d at 1038.

In this case, the First, Fourth, Fifth, and Sixth Causes of Action against the Sheriff Defendants are based on their enforcement and execution of judicial orders.  (*See* Compl. at 5–6.)  The Second Cause of Action is also partially based on the Sheriff Defendants' enforcement and execution of judicial orders.  (*Id*. at 5.)  However, Plaintiffs do not allege any factual basis to support that the state court's orders are facially invalid.  *See Engebretson*, 724 F.3d at 1039–41 n.7 (holding officials immune for executing facially valid court order); *George*, 78 Cal. App. 4th at 1054 (immunizing Sheriff from liability for executing orders, including writ of possession of real property, that "are regular on their face").  Rather, Plaintiffs' allegations and supporting documents attached to the Complaint show that Plaintiff Bell's bankruptcy petition did not automatically stay the eviction.  (*See* Doc. 1-2 at 30–32, 49.)  As the bankruptcy court informed Plaintiffs (*id*.), Plaintiff Bell's bankruptcy petition did not act as an automatic stay because the San Diego Superior Court entered judgment against Plaintiffs on July 23, 2025—thus terminating Plaintiffs' possessory interests in the property—several weeks before he filed the bankruptcy petition. *See In re Perl*, 811 F.3d 1120, 1127 (9th Cir. 2016) (the "entry of judgment and a writ of

17

possession following unlawful detainer proceedings extinguishes all other legal and equitable possessory interests in the real property at issue."). The Sheriff Defendants are therefore entitled to immunity from § 1983 liability for enforcing the Writ of Possession. *See Ezor*, 2020 WL 2813538, at *5 ("A public official is entitled to immunity from suit for civil rights claims arising out of his or her execution or enforcement of a facially valid court order.").

To the extent Plaintiffs claim the Sheriff Defendants waived immunity by ignoring the automatic stay arising from Plaintiff Bell's bankruptcy petition, their claim similarly fails. Plaintiffs cite no authority, and the Court has located none, that would impose a legal duty on the Sheriff to investigate the legality of court orders before enforcement. *See Engebretson*, 724 F.3d at 1039–41 & n.7 (rejecting argument that officials have independent duty to investigate legality of court order before enforcing it); *see also Arrieta v. Mahon*, 31 Cal. 3d 381, 392 (1982) (noting the Sheriff's function is to execute writ or other orders that are "regular on their face and issued by competent authority" and does not "include a determination of the merits of the underlying action").

Accordingly, the First, Fourth, Fifth, and Sixth Causes of Action against the Sheriff Defendants must be **<u>DISMISSED</u>** for seeking relief from immune defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). *See Brincken v. Royal*, No. 2:12–cv–2599–MCE–CKD PS, 2013 WL 211245 at *3 (E.D. Cal. Jan. 10, 2013) (finding sheriff deputies were entitled to immunity and dismissing § 1983 claims based on their service of an eviction notice and writ of possession pursuant to a court order). The Second Cause of Action is also **<u>DISMISSED</u>** to the extent it is based on the Sheriff Defendants' enforcement and execution of judicial orders.

**D.    Leave to Amend**

As previously discussed (*see* Sec.III.A), the Court lacks subject matter jurisdiction over Plaintiffs' claims arising from the state court's judgment in the Unlawful Detainer Action and its subsequent enforcement because such claims are barred by the *Rooker-Feldman* doctrine. Accordingly, the First, Fourth, and Sixth Causes of Actions are

18

**DISMISSED** **without leave to amend**. *See In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981, 990 (9th Cir. 2008) (holding amendment is futile where plaintiff could not plead subject matter jurisdiction); *see, e.g.*, *Arellano v. Lamborn*, No. 3:19-CV-02360-JAH-LL, 2020 WL 376148, at *5 (S.D. Cal. Jan. 23, 2020) (dismissing the action on screening for lack of subject matter jurisdiction without leave to amend where certain claims were barred by the *Rooker-Feldman* doctrine).

For the same reasons, the Court also dismissed the Second and Fifth Causes of Action for lack of subject matter jurisdiction. Thus, to the extent such claims arise from the Unlawful Detainer Action, the Second and Fifth Causes of Action are **DISMISSED without leave to amend**. However, Plaintiffs assert other possible factual bases for their Second, Third, and Fifth Causes of Action that do not arise from the Unlawful Detainer Action. (*See* Sec.III.B.2–3.) Given their pro se status, the Court **GRANTS** Plaintiffs leave to amend the Second, Third, and Fifth Causes of Action to the extent such claims are not premised on the legality and enforcement of the state court's judgment in the Unlawful Detainer Action. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV.    TRO APPLICATION

In the TRO Application, Plaintiffs request that this Court stay "all enforcement proceedings related to the Writ" and "[t]ransfer appellate review from the Appellate Division of the Superior Court to the Fourth District Court of Appeal." (Doc. 2 at 4.) As the Complaint has been dismissed (*see* Sec. III.A–C), the Court finds the TRO Application is moot because the there is no underlying operative complaint. *See Jones v. Fed. Corr. Ctr. Med. Dep't*, No. 20-CV-1385 JLS (BLM), 2020 WL 6942519, at *4 (S.D. Cal. Nov. 25, 2020) (denying prisoner's IFP motion and denying the TRO motion as moot); *Olajide v. Brown*, Case No. 18-cv-03991-CRB, 2018 WL 3328227, at *3 (N.D. Cal. July 6, 2018)

(dismissing the complaint and denying the TRO motion as moot).  Nonetheless, for the reasons set forth below, the Court finds the TRO Application lacks merit.

**A.    Legal Standard**

Rule 65(b) governs the issuance of a temporary restraining order ("TRO").  The "underlying purpose" of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held.  *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).  The standard for a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted).  To obtain a TRO or a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 20 (the "*Winter* factors")).  The "[l]ikelihood of success on the merits 'is the most important' *Winter* factor[.]" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)).

**B.    Likelihood of Success on the Merits**

In the TRO Motion, Plaintiffs request: (1) immediate restoration of possession and delivery of all keys; (2) 30 days of unrestricted 24/7 possession (through September 26, 2025) to reside, pack, and move belongings with dignity; (3) that the Sheriff's Department and Coronado police stand down from any further removal, arrest, or intimidation, (4) a written stipulation of compliance signed by Defendants; (5) a judicial finding that Plaintiffs have not abandoned their property; (6) recognition that the residence contains belongings equivalent to a fully furnished three-bedroom household; (7) immediate reimbursement of hotel costs already incurred, the bail bond, and continuing hotel costs until full possession

is restored; and (8) that Defendants be barred "from leasing, advertising, or disposing of property until Plaintiffs vacate. (Doc. 2 at 4 (cleaned up).) In the alternative, Plaintiffs request at a minimum 24/7 possession through September 12, 2025 without office-hour or supervised limitations. (*Id*.)

For the reasons discussed *supra* (*see* Sec. III.A), the Court concludes it does not have the authority to grant Plaintiffs' requested relief under the *Rooker-Feldman* doctrine. As the Court has no jurisdiction to review or invalidate the state court's judgment, Plaintiffs cannot demonstrate a likelihood of success on the merits, or even a "serious question," as to their claims. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) ("[A]t an irreducible minimum the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation."); *see, e.g.*, *In re Bauman*, No. 3:24-CV-1564 JLS (BLM), 2024 WL 4647299, at \*6 (S.D. Cal. Oct. 31, 2024) (holding *Rooker-Feldman* precluded TRO as plaintiff sought to prevent "the state court's eviction order from being carried out," and his challenge was based on the court clerk's error); *Lara v. Servs.*, No. 12cv904-LAB (POR), 2012 WL 12872451, at \*1 (S.D. Cal. June 5, 2012) (denying injunction where "[plaintiff] had the opportunity to contest his eviction in San Diego Superior Court, and he lost. The *Rooker-Feldman* doctrine bars him from seeking relief from that loss in federal court."). Where, as here, the moving party fails to meet his burden on the threshold inquiry of likelihood of success on the merits, "the court need not consider the other factors." *Disney Enters.*, 869 F.3d at 856 (cleaned up). Accordingly, the TRO Motion is **DENIED**.

## V.    CONCLUSION

For the reasons set forth above, the Court **ORDERS** as follows:

1.    Plaintiffs' IFP Application (Doc. 3) is **GRANTED**.

2.    The Complaint is **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii) for lack of federal subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3), for failure to state a claim, and for seeking relief against immune defendants. Specifically:

     a.  The First, Fourth, and Sixth Causes of Actions are **DISMISSED without leave to amend**.

     b.  The Third Cause of Action is **DISMISSED with leave to amend**.

     c.  The Second and Fifth Causes of Actions are **DISMISSED with leave to amend** only to the extent such causes of action are not premised on the legality or enforcement of the state court's judgment in the Unlawful Detainer Action.  The Second and Fifth Causes of Actions are otherwise **DISMISSED without leave to amend**.

3.    Plaintiff may file an amended complaint that cures the deficiencies identified above on or before **October 24, 2025**.

4.    Plaintiffs' TRO Motion (Doc. 2) is **DENIED**.

If Plaintiffs fail to timely file an amended complaint on or before October 24, 2025, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

DATE:  October 8, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE